UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| P.T.,<br><br>　　　　　　Plaintiff(s),<br><br>　v.<br><br>LAURA HERMOSILLO, et al.,<br><br>　　　　　　Defendant(s). | CASE NO. C25-2249-KKE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Three days after Petitioner was arrested and detained by United States Immigration and Customs Enforcement ("ICE") agents, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Dkt. No. 1. His petition argues that his detention is unlawful because it violates his constitutional right to procedural due process. *Id*. at 4. The Court agrees and will therefore grant the petition.

## I.　BACKGROUND

Petitioner is a citizen of India who entered the United States in January 2023, and was thereafter processed for removal proceedings. Dkt. No. 16 ¶ 3. Petitioner was apprehended and charged with inadmissibility under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. *Id*. Petitioner was released on an order of recognizance, requiring him to, among other things, enroll in and comply with the Alternatives to Detention ("ATD") program. *Id*. ¶ 4; Dkt. No. 17-1. Petitioner's conditions of release indicate that a failure to comply with ATD program

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

requirements would result in a redetermination of his release conditions or his arrest and detention. Dkt. No. 17-1 at 2.

Petitioner moved to Portland, Oregon; filed an application for asylum in November 2023; and was scheduled for an asylum hearing on October 11, 2028. Dkt. No. 5-2, Dkt. No. 5-4, Dkt. No. 17-2 at 3–4. Petitioner filed an application for work authorization, which was approved through April 6, 2029. Dkt. No. 17-2 at 4.

Believing that Petitioner had missed six check-ins in 2023 required by the ATD program, ICE agents visited Petitioner's last known address on November 8, 2025. Dkt. No. 17-2 at 3. Petitioner answered the door, the agents confirmed his identity, and then the agents arrested Petitioner and other individuals residing in his apartment. *Id*. Petitioner was transported to a Portland ICE office and thereafter transferred to the Northwest ICE Processing Center in Tacoma, Washington, where he remains in custody. Dkt. No. 5-5, Dkt. No. 17-2 at 3.

Petitioner filed a petition for a writ of habeas corpus requesting immediate release from detention. Dkt. No. 1. For the following reasons, the Court grants the habeas petition.

## II.    ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The parties agree that the *Mathews* test applies here (Dkt. No. 15 at 10, Dkt. No. 18 at 7), and the Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.[1]

---

[1] Although the Government asserts that Petitioner falls within the mandatory detention scheme under 8 U.S.C. § 1225(b) simply because he has not been "admitted" to the United States (Dkt. No. 15 at 7), this Court joins others in rejecting an expansion of the scope of this scheme to include Petitioner. *See, e.g.*, *Rodriguez v. Bostock*, __ F. Supp. 3d __, 2025 WL 2782499, at *5, 24 (W.D. Wash. Sep. 30, 2025) (rejecting the Government's recently adopted position that Section 1225(b) applies to any applicant for admission); *Make the Road N.Y. v. Noem*, __ F. Supp. 3d __, 2025 WL 2494908, at *10–13 (D.D.C. Aug. 29, 2025) ("The Court therefore rejects the Government's extraordinary request to treat as falling outside of the Constitution's due process guarantee the millions of immigrants who, although they may have entered unlawfully, have established lives here and made this country home."); *Salgado v. Mattos*, No. 2:25-cv-01872-RJB-EJY, 2025 WL 3205356, at *20 (D. Nev. Nov. 17, 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)). To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected. In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 3

**A.     Petitioner Has a Protected Interest in His Liberty.**

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner was arrested in his home, detained and transferred to a facility in a different state, and remains detained today undoubtedly deprives him of an established interest in his liberty.

The Government[2] contends that because Petitioner was notified that ATD violations would lead to a revocation of his release, and he was released for only a "relatively short period of time[,]" Petitioner's liberty interest is "tempered." Dkt. No. 15 at 11. The Court disagrees. Although "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process" (*Demore v. Kim*, 538 U.S. 510, 523 (2003)), this authority does not indicate that detention without due process is constitutionally valid. Moreover, that Petitioner was aware that ATD violations could lead to revocation does not mean that he agreed to be detained whenever the Government alleges that he violated his ATD conditions. Accordingly, the Court finds that Petitioner's liberty interest is sufficiently robust to be constitutionally protected. *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

---

[2] This order refers to the federal Respondents—Laura Hermosillo (Seattle Field Office Director for ICE's Enforcement and Removal Operations), Kristi Noem (DHS Secretary), Pamela Bondi (U.S. Attorney General), and DHS—collectively as "the Government."

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 4

**B.    The Risk of Erroneous Deprivation of Liberty is High.**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court agrees with Petitioner that the risk of erroneous deprivation of his liberty interest in the absence of a pre-detention hearing is high.

The Government argues that "the risk of a constitutionally significant deprivation of Petitioner's liberty without a predeprivaion hearing here is minimal" because "Petitioner had notice that his ATD violations could lead to his redetention[.]" Dkt. No. 15 at 11.  But again, even if the Government did have a valid reason to detain Petitioner, that does not eliminate its obligation to effectuate the detention in a manner that comports with due process.  *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) ("Where, as here, the petitioner has not received any bond or custody hearing, the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." (citation modified)).  The Court finds no reason to assume the accuracy of the Government's records of Petitioner's ATD violations, or to assume that they alone justify detention, particularly because the violations apparently occurred in 2023 and he was not detained until 2025.  *See* Dkt. No. 17-2 at 3.  During the time between the alleged violations and his detention, Petitioner attended multiple in-person appointments until the Government reduced his level of supervision and authorized Petitioner to check in via an application on his phone.  The Government did not mention any violations during any of those check-ins.  *See* Dkt. No. 18 at 9.  These circumstances erode the Court's confidence in the validity of the Government's stated rationale for detaining Petitioner, but any factual dispute about the validity of the violations should have been resolved at a pre-deprivation hearing.  *See, e.g.*, *Rodriguez Diaz v. Kaiser*, No. 25-cv-05071-TLT, 2025 WL 3011852, at *10 (N.D. Cal. Sep. 16, 2025) (explaining that factual disputes

as to violations of release conditions "must be adjudicated at a pre-deprivation hearing and they do not extinguish the liberty interest that grew when Respondents 'permitted [Petitioner-Plaintiff] to develop an out-of-custody life in the United States' over the past five years" (quoting *Pinchi*, 792 F. Supp. 3d at 1034 n.5)).

C.  **The Government Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing.

The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing on alleged ATD violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

The Government argues that it has a "strong interest" in preventing noncitizens from remaining in the United States in violation of the law, as well as in ensuring its orders are followed. Dkt. No. 15 at 11. Those interests are not threatened if a pre-deprivation hearing is required, however. That Petitioner's alleged violations occurred months or even years before they were acted upon, and Petitioner participated in multiple appointments where any violations could have been addressed but were not, undermines any suggestion that the Government's interests must be satisfied immediately or that the cost of procedural safeguards would be insurmountable.

For these reasons, the Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is minimal: any administrative or financial burdens

in providing Petitioner a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.

As the Court's review of the *Mathews* factors suggests, Petitioner's re-detention does not comport with due process.

In summary, as this and numerous other courts throughout the Ninth Circuit have repeatedly held, once a noncitizen has satisfied a DHS officer that he is not a flight risk or danger to the community and is released from immigration custody, he may not be re-detained absent notice and an opportunity to be heard. *See, e.g.*, *Ortega*, 415 F. Supp. 3d at 969–70; *Ramirez Tesara v. Wamsley*, __ F. Supp. 3d __, No. 2:25-cv-01723-MJP-TLF, 2025 WL 2637663, at *5 (W.D. Wash. Sep. 12, 2025); *E.A. T.-B. v. Wamsley*, __ F. Supp. 3d __, No. C25-1192-KKE, 2025 WL 2402130, at *2–6 (W.D. Wash. Aug. 19, 2025); *Y.M.M. v. Wamsley*, No. 2:25-02075, 2025 WL 3101782, at *3 (W.D. Wash. Nov. 6, 2025).

### III.   CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS that Petitioner shall be released from custody immediately and may not be re-detained until after a hearing is held (with adequate notice) to determine whether detention is appropriate.

Dated this 26th day of November, 2025.

Kymberly K. Evanson
United States District Judge